## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **WILMA Y. SÁNCHEZ LUPERÓN**, Plaintiff, <br><br> v. <br><br><br> **BAXTER INTERNATIONAL INC.; BAXTER SALES AND DISTRIBUTION PR CORP/LLC; and JOHN/JANE DOES 1–10,** Defendants. | **Civil No:** |

## COMPLAINT AND JURY DEMAND

Plaintiff Wilma Y. Sánchez Luperón ("Plaintiff" or "Ms. Sánchez Luperón"), through the undersigned counsel, respectfully files this Complaint against Defendants Baxter International Inc.; Baxter Sales and Distribution PR Corp/LLC; and John/Jane Does 1–10 (collectively "Baxter" or "Defendants"), and alleges as follows:

## PRELIMINARY STATEMENT

1.  This is an action for race, color, national origin, and age discrimination; discriminatory compensation; failure to promote; retaliation; discriminatory professional diminishment; and unlawful termination arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.; 42 U.S.C. § 1981; the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 et seq.; Puerto Rico Law 100; Puerto Rico Law 115; Puerto Rico Law 80; Article II, Section 8 of the Constitution of Puerto Rico; and related Puerto Rico law.

2.  This action arises from a continuing pattern of discriminatory professional diminishment imposed upon Plaintiff over a prolonged period of time and culminating in her unlawful and pretextual termination.

3.  Throughout the final years of Plaintiff's employment, Defendants systematically stripped Plaintiff of professional visibility, denied her title and compensation commensurate with the responsibilities she actually performed, excluded her from executive leadership

- -                                                                                                          1

structures and strategic decision-making, deprived her of advancement opportunities, progressively expanded her managerial responsibilities without corresponding authority or compensation, and ultimately replaced her with a younger, white, Mexican employee in substantially the same role.

4. Plaintiff, a Black woman of Dominican national origin who was fifty (50) years of age at the time of her termination, devoted approximately twelve (12) years of exceptional service to Baxter's Quality Assurance operations for Puerto Rico, the Caribbean, and Latin America North.

5. Plaintiff successfully led FDA inspections resulting in zero observations, maintained and expanded regional Quality systems, supervised operations affecting multiple countries, managed critical distributor compliance operations, coordinated transition processes associated with Baxter's corporate spin-off, and became the principal Quality resource for territories spanning Puerto Rico, the Caribbean, Mexico, Panama, Costa Rica, and regional distributors throughout Latin America North.

6. Beginning in or around May 2024, Plaintiff performed the full operational and regulatory functions of Regional Quality Manager for Latin America North, yet Defendants intentionally denied her the corresponding Manager title, compensation structure, organizational authority, and executive visibility afforded to younger, white, non-Dominican employees.

7. Defendants repeatedly excluded Plaintiff from Senior Leadership Team ("SLT") meetings, Governance meetings, strategic planning sessions, Rapid Response meetings, Sales Conventions, and executive communications directly affecting the operations she was required to manage.

8. These exclusions materially impaired Plaintiff's organizational authority, advancement opportunities, visibility, leadership standing, and ability to participate in decisions directly impacting the operations and employees under her supervision.

9. Defendants ultimately terminated Plaintiff under the false pretense that her position was being "moved to Mexico" or "eliminated," while simultaneously assigning substantially the same role — with the Manager title and compensation structure previously denied to Plaintiff — to Euridice Rebollo, a younger, white woman of Mexican descent.

10. Defendants' discriminatory conduct was not episodic. Rather, it formed part of a continuous, cumulative, and systemic pattern of discriminatory professional diminishment affecting Plaintiff's compensation, title, visibility, authority, advancement opportunities, organizational standing, and continued employment.

11. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered substantial economic losses, emotional distress, humiliation, psychiatric and psychological injuries, professional and reputational harm, loss of career advancement opportunities, and severe damage to her earning capacity.

12. Plaintiff continues to undergo psychiatric and psychological treatment and has undertaken substantial efforts to mitigate her damages by actively seeking comparable employment, without success.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because this action arises under the laws of the United States, including Title VII, 42 U.S.C. § 1981, and the ADEA.

14. This Court has supplemental jurisdiction over Plaintiff's Puerto Rico law claims pursuant to 28 U.S.C. § 1367.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the unlawful employment practices complained of herein occurred within the District of Puerto Rico, Plaintiff performed substantial employment duties within this District, and Defendants conduct business within this District.

## PARTIES

16. Plaintiff Wilma Y. Sánchez Luperón is an adult resident of Puerto Rico, of Dominican national origin, and a Black woman born on January 4, 1975.

17. Defendant Baxter International Inc. is a corporation organized under the laws of Delaware with operations in Puerto Rico.

18. Defendant Baxter Sales and Distribution PR Corp/LLC is a corporate entity organized under the laws of Puerto Rico and operating within Puerto Rico.

19. At all relevant times, Defendants functioned as a single integrated enterprise sharing common management, labor relations, policies, human resources functions, and operational control over Plaintiff's employment.

20. John/Jane Does 1–10 are persons or entities presently unknown who participated in, authorized, ratified, implemented, or materially contributed to the unlawful conduct alleged herein.

## ADMINISTRATIVE EXHAUSTION

21. Plaintiff timely filed a Charge of Discrimination before the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based on race, color, national origin, age, and retaliation.

22. Plaintiff received a Notice of Right to Sue and timely files this action within the applicable statutory period.

23. All administrative prerequisites and conditions precedent to the filing of this action have been satisfied.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Exceptional Performance and Institutional Importance

24. Plaintiff commenced employment with Baxter on or about December 23, 2013, as a Quality Assurance Representative.

25. Throughout her employment, Plaintiff consistently performed her duties with distinction, professionalism, and exceptional regulatory competence.

26. In 2014, after Plaintiff received an external employment offer and resigned, Baxter issued a counteroffer to retain her services, recognizing her importance and value to the organization.

27. On December 14, 2014, Plaintiff became a regular employee with the title of QA Associate III and reported directly to management personnel in Mexico.

28. Beginning in or around 2015, Plaintiff became the principal Quality representative responsible for Puerto Rico, the Caribbean, and regional distribution operations spanning multiple countries.

29. Plaintiff operated with minimal supervision and became the recognized subject matter expert regarding Puerto Rico, Caribbean, and distributor Quality operations.

30. From approximately 2016 through 2023, none of the Mexico-based Quality Managers or Directors to whom Plaintiff reported regularly visited the Puerto Rico facilities.

31. Plaintiff independently maintained and supervised critical Quality systems throughout Puerto Rico, the Caribbean, and regional distributor operations.

32. On December 5, 2016, Plaintiff led an FDA inspection resulting in zero observations.

33. Plaintiff personally led and managed the inspection process and successfully coordinated the inspection from opening through closeout.

34. Despite Plaintiff's leadership and successful performance, recognition for the inspection was attributed to another employee.

35. On September 6, 2022, Plaintiff again led an FDA inspection resulting in zero observations.

36. During said inspection, the FDA investigator noted the absence of local Quality management and observed that supervisory personnel operated virtually from Mexico.

37. Plaintiff nevertheless successfully led the inspection process and maintained regulatory compliance.

38. Throughout her employment, Plaintiff consistently received increasing responsibilities and operational duties without corresponding advancement in title, compensation, or organizational authority.

**B. Spin-Off Transition and Systematic Exclusion**

39. Beginning in 2023, Baxter initiated a corporate spin-off process involving substantial restructuring of Quality operations throughout Latin America.

40. Strategic workshops and planning sessions were conducted to determine post-spin-off responsibilities, reporting structures, and operational divisions.

41. Plaintiff was systematically excluded from these workshops despite the fact that they directly affected the territories and operations Plaintiff managed.

42. Plaintiff's supervisor, Marcela E. Fernández, informed workshop organizers that Plaintiff's attendance was unnecessary.

43. Nevertheless, workshop participants later contacted Plaintiff because the individuals present lacked sufficient knowledge regarding Puerto Rico and Caribbean operations.

44. Plaintiff's exclusion materially impaired her ability to participate in strategic operational decisions directly affecting her responsibilities.

45. Following organizational restructuring, Plaintiff assumed additional responsibilities involving Central American distributors without transition support, orientation, staffing assistance, compensation adjustments, or organizational recognition.

46. Plaintiff was required to independently familiarize herself with new territories, distributor operations, and compliance functions.

47. No formal transition process or organizational announcement accompanied the expansion of Plaintiff's duties.

**C. Discriminatory Denial of Title, Compensation, and Advancement**

48. On April 25, 2024, Plaintiff was informed that she would assume responsibility for Quality LATAM North.

49. Plaintiff understood that the role involved managerial and regional oversight responsibilities substantially equivalent to those assigned to comparable regional Quality leaders.

50. On May 1, 2024, Baxter formally announced the promotion of Thais Oliveira, a younger, white woman of Brazilian descent, to QA Manager for Latin America South.

51. On that same date, Plaintiff began performing substantially equivalent managerial responsibilities for Latin America North.

52. Defendants nevertheless denied Plaintiff the corresponding Manager title, compensation structure, and organizational standing.

53. Plaintiff supervised personnel, managed Quality systems spanning multiple countries, oversaw transition projects, supervised distributor compliance operations, coordinated audits, managed cross-functional compliance systems, and performed the full operational functions of a regional managerial role.

54. Defendants maintained Plaintiff at the Supervisor level while assigning her broad regional managerial responsibilities.

55. Plaintiff later discovered that Defendants placed her at the same compensation grade as substantially younger subordinates whom she supervised.

56. Plaintiff additionally discovered that her compensation remained significantly below the compensation range applicable to Manager-level positions within the United States/Puerto Rico compensation structure.

57. Plaintiff raised concerns regarding the discriminatory organizational structure, title disparity, and compensation inequities directly with Christine Gladwell.

58. Plaintiff specifically objected to the fact that Defendants placed Plaintiff, a Supervisor, in authority over Vida Abarca, a Superintendent occupying a formally higher organizational classification.

59. Plaintiff additionally objected to the fact that Defendants awarded the Manager title to younger, non-Black, non-Dominican employees performing substantially similar or lesser regional responsibilities.

60. Defendants failed and refused to correct these inequities.

61. Defendants never provided Plaintiff with the Manager title, compensation, or organizational status corresponding to the responsibilities she actually performed.

62. Defendants promoted younger, non-Black, non-Dominican employees to Manager-level positions while denying Plaintiff equivalent advancement.

63. These employees included, upon information and belief, Thais Oliveira, Verónica García, and Zachary.

**D. Continuing Pattern of Discriminatory Professional Diminishment**

64. Beginning no later than May 2024 and continuing through Plaintiff's termination, Defendants subjected Plaintiff to a continuing pattern of discriminatory professional diminishment affecting the terms, conditions, privileges, authority, visibility, compensation, advancement opportunities, and organizational standing of her employment.

65. This pattern operated through the systematic expansion of Plaintiff's managerial responsibilities without corresponding title, compensation, authority, visibility, or executive recognition.

66. Defendants required Plaintiff to supervise personnel, direct regional Quality operations, manage cross-border compliance systems, oversee transition processes associated with the corporate spin-off, coordinate audits, supervise distributor compliance functions, and lead strategic Quality initiatives affecting multiple countries.

67. Simultaneously, Defendants denied Plaintiff the title, authority, compensation, and executive visibility routinely afforded to younger, white, and non-Dominican employees.

68. Plaintiff was repeatedly excluded from Senior Leadership Team meetings, Governance meetings, strategic planning discussions, Rapid Response meetings, Sales Conventions, and executive-level organizational communications.

69. These exclusions materially impaired Plaintiff's professional standing, organizational visibility, authority, leadership credibility, advancement opportunities, and ability to participate in decisions directly affecting the operations she managed.

70. Plaintiff was excluded from meetings despite functioning as the effective Quality lead for Latin America North.

71. Plaintiff repeatedly learned of leadership meetings, strategic events, and organizational discussions only through third parties or after such events had already occurred.

72. Plaintiff's repeated exclusion diminished her authority before peers, subordinates, and leadership personnel.

73. Defendants additionally forced Plaintiff to absorb substantial additional responsibilities following the departure or reassignment of other employees without any corresponding compensation adjustment, title advancement, staffing support, or organizational recognition.

74. Plaintiff repeatedly objected to the discriminatory disparities affecting her compensation, title, and organizational standing.

75. Defendants nevertheless continued the pattern of exclusion, isolation, visibility suppression, and professional diminishment.

**E. Protected Activity and Escalating Retaliation**

76. Plaintiff engaged in protected activity by objecting to discriminatory disparities affecting her title, compensation, organizational structure, advancement opportunities, and treatment.

77. Plaintiff directly raised concerns regarding discriminatory compensation and organizational inequities with Christine Gladwell and other management personnel.

78. Plaintiff objected to the organizational anomaly created by Defendants' decision to place Plaintiff, formally classified as a Supervisor, over higher-classified personnel.

79. Plaintiff additionally objected to Defendants' refusal to provide Plaintiff the Manager title and compensation awarded to younger, non-Black, non-Dominican employees.

80. Following Plaintiff's objections, Defendants intensified the pattern of exclusion, organizational isolation, professional diminishment, and adverse treatment directed toward Plaintiff.

81. Plaintiff's exclusion from leadership meetings, strategic planning discussions, and executive communications continued and intensified following Plaintiff's objections.

82. Plaintiff additionally experienced increasing organizational isolation and diminishing visibility within leadership structures.

**F. Pretextual Termination and Replacement**

83. On June 11, 2025, Plaintiff was informed that her position allegedly was being "moved to Mexico" and that no alternative positions existed within Baxter.

84. This explanation was false and pretextual.

85. While Plaintiff remained an active employee, Defendants announced that Euridice Rebollo, a younger, white woman of Mexican descent, had assumed the role of Quality Manager for Latin America North.

86. Defendants thereby assigned substantially the same role — with the Manager title and compensation structure previously denied to Plaintiff — to a younger, white, Mexican employee.

87. During transition sessions, Rebollo informed Plaintiff that she had been advised Plaintiff would be transferred to another position within Baxter rather than terminated.

88. Defendants additionally conducted interviews for Quality-related positions while Plaintiff remained an active employee.

89. Defendants failed to inform Plaintiff of such opportunities or consider Plaintiff for continued employment despite Plaintiff's qualifications, institutional knowledge, and extensive regional experience.

90. At no point prior to her termination was Plaintiff placed on a Performance Improvement Plan, formally disciplined, suspended, demoted, or advised that her performance was deficient.

91. To the contrary, Defendants consistently entrusted Plaintiff with expanding regional responsibilities and critical operational functions.

92. Plaintiff's termination became effective on or about August 15, 2025.

### G. Damages and Mitigation

93. Since her termination, Plaintiff has actively sought comparable employment and undertaken substantial efforts to mitigate her damages.

94. Plaintiff nevertheless remains unemployed.

95. Plaintiff continues to receive psychiatric and psychological treatment as a direct consequence of Defendants' unlawful conduct.

96. Defendants' actions caused Plaintiff severe emotional distress, humiliation, psychiatric injuries, professional harm, reputational damage, and substantial economic losses.

97. Defendants' conduct additionally caused Plaintiff loss of career advancement opportunities, loss of earning capacity, and continuing economic hardship.

## COUNT I

## TITLE VII – RACE, COLOR, AND NATIONAL ORIGIN DISCRIMINATION

98. Plaintiff realleges and incorporates all preceding paragraphs.

99. Plaintiff is a Black woman of Dominican national origin and therefore belongs to protected classes under Title VII.

100. Defendants subjected Plaintiff to adverse employment actions including discriminatory compensation, denial of promotion, denial of title, organizational exclusion, diminished authority, diminished visibility, failure to provide advancement opportunities, and termination.

101. Plaintiff performed managerial and regional functions substantially equivalent to those performed by younger, white, non-Dominican employees who received Manager titles, compensation, organizational authority, and advancement opportunities denied to Plaintiff.

102. Defendants promoted younger, white, non-Dominican employees including Thais Oliveira while denying Plaintiff equivalent advancement.

103. Defendants compensated Plaintiff at lower levels than similarly situated younger, non-Black, non-Dominican employees despite Plaintiff's broader regional responsibilities.

104. Defendants excluded Plaintiff from leadership structures and strategic decision-making while including similarly situated younger, white, non-Dominican employees.

105. Defendants ultimately replaced Plaintiff with a younger, white woman of Mexican descent in substantially the same role.

106. Defendants' conduct violated Title VII.

## COUNT II

### 42 U.S.C. § 1981

107. Plaintiff realleges and incorporates all preceding paragraphs.

108. Defendants intentionally discriminated against Plaintiff on the basis of race in the making, performance, enjoyment, modification, and termination of the contractual relationship governing Plaintiff's employment.

109. Defendants denied Plaintiff contractual benefits, compensation, advancement opportunities, organizational authority, and continued employment routinely afforded to non-Black employees.

110. Defendants' conduct violated 42 U.S.C. § 1981.

## COUNT III

### ADEA

111. Plaintiff realleges and incorporates all preceding paragraphs.

112. Plaintiff was fifty (50) years old at the time of her termination.

113. Defendants treated substantially younger employees more favorably than Plaintiff with respect to title, compensation, advancement opportunities, organizational standing, and continued employment.

114. Plaintiff was replaced by substantially younger personnel.

115. Defendants' conduct violated the ADEA.

## COUNT IV

### CONTINUING PATTERN OF DISCRIMINATORY PROFESSIONAL DIMINISHMENT

### (TITLE VII, § 1981, ADEA)

116. Plaintiff realleges and incorporates all preceding paragraphs.

- -                                                                          11

117. Defendants subjected Plaintiff to a continuing pattern of discriminatory professional diminishment affecting the terms, conditions, privileges, authority, visibility, compensation, advancement opportunities, and organizational standing of her employment.

118. Said conduct included assigning Plaintiff managerial and regional responsibilities without corresponding title or compensation.

119. Said conduct additionally included excluding Plaintiff from executive leadership structures and strategic decision-making while simultaneously requiring Plaintiff to manage operations directly affected by such decisions.

120. Defendants progressively expanded Plaintiff's regional responsibilities without corresponding advancement, compensation, visibility, or organizational recognition.

121. Defendants thereby diminished Plaintiff's authority, professional standing, organizational visibility, advancement opportunities, and leadership credibility.

122. The discriminatory acts described herein were continuous, cumulative, interrelated, and systemic.

123. Defendants' conduct violated Title VII, § 1981, and the ADEA.

## COUNT V

## RETALIATION

124. Plaintiff realleges and incorporates all preceding paragraphs.

125. Plaintiff engaged in protected activity by objecting to discriminatory disparities affecting her title, compensation, organizational structure, advancement opportunities, and treatment.

126. Defendants thereafter intensified the pattern of exclusion, organizational isolation, diminished visibility, adverse treatment, and ultimately terminated Plaintiff.

127. Defendants' retaliatory conduct violated Title VII, § 1981, the ADEA, and Puerto Rico law.

## COUNT VI

## PUERTO RICO LAW 100

128. Plaintiff realleges and incorporates all preceding paragraphs.

- -    12

129. Defendants discriminated against Plaintiff on the basis of race, color, national origin, and age in violation of Puerto Rico Law 100.

## COUNT VII

### PUERTO RICO LAW 115

130. Plaintiff realleges and incorporates all preceding paragraphs.

131. Defendants retaliated against Plaintiff for opposing unlawful discriminatory practices.

132. Defendants' conduct violated Puerto Rico Law 115.

## COUNT VIII

### PUERTO RICO LAW 80

133. Plaintiff realleges and incorporates all preceding paragraphs.

134. Plaintiff was terminated without just cause.

135. Defendants' conduct violated Puerto Rico Law 80.

## COUNT IX

### PUERTO RICO CONSTITUTIONAL AND TORT CLAIMS

136. Plaintiff realleges and incorporates all preceding paragraphs.

137. Defendants' conduct constituted unlawful attacks upon Plaintiff's dignity, honor, reputation, and private life in violation of Article II, Section 8 of the Constitution of Puerto Rico.

138. Defendants are additionally liable under Puerto Rico law for the damages caused by their unlawful conduct.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants as follows:

A. Declaring Defendants' conduct unlawful;

B. Awarding back pay, front pay, lost benefits, and all economic damages;

C.  Awarding compensatory damages for emotional distress, humiliation, psychiatric and psychological injuries, mental anguish, reputational harm, and professional damages;

D.  Awarding double damages under Puerto Rico law;

E.  Awarding punitive damages;

F.  Awarding attorneys' fees, costs, and expenses;

G.  Awarding pre-judgment and post-judgment interest; and

H.  Granting such other and further relief as this Court deems just and proper.

**TRIAL BY JURY IS HEREBY DEMANDED.**

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 22nd day of May, 2026.

**Despacho Legal Dorna Llompart**

**Marcelle D. Martell Jovet**
USDC-PR No. 211807
Despacho Legal Dorna-Llompart
Tel: (787) 717-6691
mmartelljovet@gmail.com